[Cite as *State v. Ford*, 2021-Ohio-782.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-10-027 |
| | : | O P I N I O N |
| - vs - | | 3/15/2021 |
| | : | |
| GREGORY W. FORD II, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20180200


Nicholas A. Adkins, Madison County Prosecuting Attorney, Rachel M. Price, 59 N. Main Street, London, Ohio 43140, for appellee

Culp, Parsons and Murray, LLC, Joshua W. Beasley, 8 E. Main Street, West Jefferson, Ohio 43162, for appellant



**S. POWELL, J.**

{¶ 1}   Appellant, Gregory W. Ford II, appeals his conviction in the Madison County Court of Common Pleas after a jury found him guilty of two counts of felonious assault.  For the reasons outlined below, we affirm Ford's conviction.

{¶ 2}   On January 10, 2019, the Madison County Grand Jury returned an indictment

charging Ford with two counts of felonious assault in violation of R.C. 2903.11(A)(1). The charges arose after Ford struck the victim, H.S., over the back of the head with a wooden chair. This blow caused the victim to suffer a bruise to her back right shoulder and a three-inch gash in the top of her head that required seven staples to close. The blow also caused the victim to suffer a concussion, a series of severe migraine headaches, and partial loss of vision in her right eye for which she saw an ophthalmologist. The blow further required the victim to see a neurologist to treat her for sustained head and neck trauma. There is no dispute that this incident occurred on December 10, 2018 at the victim's apartment located in Plain City, Madison County, Ohio.

{¶ 3} On February 1, 2019, Ford entered a plea of not guilty. After Ford entered his plea, the trial court appointed Attorney Jeffrey Hunter to represent Ford in his defense. Ford later waived his right to a speedy trial and the trial court scheduled the matter for a jury trial.

{¶ 4} On May 7, 2019, Attorney Hunter advised the trial court that he had concerns about his continued representation of Ford. Attorney Hunter's concerns were centered around his interactions with Ford's mother who Attorney Hunter alleged had become irate with him during a telephone call and had threatened him. Finding Ford was also not comfortable with Attorney Hunter's continued representation of him, the trial court granted Attorney Hunter's request to withdraw as Ford's defense attorney.

{¶ 5} On May 8, 2019, the trial court appointed Attorney Scott Culbert to represent Ford in his defense. The next day, May 9, 2019, Attorney Culbert entered a notice of appearance and filed a demand for discovery. Attorney Culbert's discovery demand included a request that the state provide him with all laboratory or hospital reports relevant to the case, as well any pertinent physical or mental examinations.

{¶ 6} On August 29, 2019, the trial court held a one-day jury trial on the matter. During trial, the jury heard testimony from several witnesses. This included testimony from

the victim, H.S. As part of her testimony, H.S. testified that while she and Ford were arguing about a number of things, including Ford's drinking, that Ford "got quiet" and had an "evil, like, you know something is going to happen look, but you don't know quite what is going to happen look." The victim then testified:

> [Ford] was staring. And then the next thing I know is, like, he walked over from the kitchen, through the kitchen to the living room, and I had a chair and a table. * * * And he took the – he went by the chair and held it like this (indicating) on top. And I seen that look. And I got quiet because I was not going to argue with him. I told him I was not going to argue any more. I'm done arguing.

{¶ 7} Continuing, the victim testified:

> Next thing I know, [Ford] grabbed the top of the chair. * * * He grabbed the top of the chair like this (indicating), and he just had that look. He picked it up like this (indicating). And I seen it coming, but it was to the point where, you know, where you couldn't move, like your body was frozen. And he came at me with it and struck me over the top of the head. And when it happened, it happened so fast, I couldn't move, and I went like this (indicating). And when it hit, it felt like somebody hit you like a football player.

{¶ 8} Ford did not offer any witnesses in his defense. Following deliberations, the jury returned a verdict finding Ford guilty as charged.

{¶ 9} On September 10, 2019, the trial court held a sentencing hearing. During this hearing, the trial court merged the two felonious assault offenses as allied offenses of similar import. Thereafter, following the state's election to proceed on the first of the two felonious assault offenses, the trial court sentenced Ford to serve three years in prison. The trial court also ordered Ford to pay court costs and notified Ford that he would be subject to a mandatory three-year postrelease control term upon his release from prison.

{¶ 10} Ford now appeals his conviction, raising the following single assignment of error for review.

{¶ 11} APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF

COUNSEL WHERE COUNSEL FAILED TO ADEQUATELY PREPARE AND INVESTIGATE FOR TRIAL, FAILED TO PROPERLY OBJECT TO JURORS, AND FAILED TO ADEQUATELY CROSS-EXAMINE PROSECUTION WITNESSES IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶ 12} Ford argues his conviction must be reversed because Attorney Culbert provided him with ineffective assistance of counsel. We disagree.

{¶ 13} To prevail on an ineffective assistance of counsel claim, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). "[U]nder *Strickland*, in order to prevail on a claim that counsel was ineffective, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that that performance prejudiced him." *State v. Simpson*, Slip Opinion No. 2020-Ohio-6719, ¶ 18, citing *Strickland* at 687. To that end, in order for Ford to establish he received ineffective assistance in this case, Ford must (1) show that his trial counsel's performance "'fell below an objective standard of reasonableness'" as determined by "prevailing professional norms" and (2) demonstrate "'a reasonable probability that, but for [his trial] counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Graham*, Slip Opinion No. 2020-Ohio-6700 at ¶ 46, quoting *Strickland* at 688. "The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54, citing *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 14} Ford initially argues he received ineffective assistance of counsel when Attorney Culbert failed to adequately investigate and prepare for trial. Specifically, Ford argues he was provided ineffective assistance when Attorney Culbert (1) failed to request discovery to obtain the victim's medical records relating to her injuries and (2) failed to review the victim's medical records as it relates to those injuries. However, as the record

indicates, Attorney Culbert filed a motion for discovery on May 9, 2019, the day after the trial court appointed Attorney Culbert as Ford's defense attorney. There is nothing in the record to indicate Attorney Culbert did not receive that discovery nor is there anything in the record to indicate Attorney Culbert did not review the discovery that he received. This would include the victim's medical records. Attorney Culbert in fact questioned the victim regarding her injuries, and the medical records related to those injuries, on cross-examination, a line of questioning that would have not been possible had Attorney Culbert not received and reviewed the victim's medical records prior to trial. Therefore, given the record properly before this court, Ford's claim that he was provided with ineffective assistance of counsel when Attorney Culbert (1) failed to request discovery to obtain the victim's medical records relating to her injuries and (2) failed to review the victim's medical records as it relates to those injuries, lacks merit.

{¶ 15} Ford also argues he was provided ineffective assistance when Attorney Culbert failed to issue subpoenas and call as witnesses the medical professionals who treated the victim for her injuries. It is well established, however, that the "decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Johnson*, 12th Dist. Butler No. CA2011-09-169, 2013-Ohio-856, ¶ 32. This is especially true here when considering "[t]here is no indication that trial counsel's failure to subpoena these witnesses was the result of incompetence or negligence as opposed to sound trial strategy." *State v. Wells*, 12th Dist. Warren No. CA2005-04-050, 2006-Ohio-874, ¶ 14. Therefore, because even "a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel," *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 49, Ford's claim that he was provided ineffective assistance when Attorney Culbert failed to issue subpoenas and call as witnesses the medical professionals who treated the victim for her injuries lacks

merit.

{¶ 16} Ford next argues Attorney Culbert was ineffective by failing to properly object to two potential jurors – one juror who knew the prosecutor from social settings and another juror who was married to a police officer employed at another department. But, as recently noted by the Ohio Supreme Court, we are to give "great latitude to defense counsel to try their case, especially in the area of juror selection." *State v. Bates*, Slip Opinion No. 2020-Ohio-634, ¶ 48. This is because voir dire is largely a matter of strategy and tactics. *State v. Cruz*, 12th Dist. Butler No. CA2012-03-059, 2013-Ohio-215, ¶ 40, citing *State v. Keith*, 79 Ohio St.3d 514, 521 (1997). This includes decisions on the exercise and use of peremptory challenges. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 41 ("[t]he decision whether to exercise challenges to prospective jurors falls within the realm of reasonable trial strategy"); *see, e.g., State v. Maurer*, 5th Dist. Stark No. CA-7253, 1988 Ohio App. LEXIS 1608, *17-18 (Apr. 25, 1988) (trial counsel was not ineffective for failing to "exercise all pre-emptory jury challenges" upon finding "this argument is once again the type of second-guessing and hindsight proscribed by *Strickland*"). Therefore, because "[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire," *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 64, Ford's claim that he was provided ineffective assistance when Attorney Culbert failed to properly object to two potential jurors lacks merit.

{¶ 17} Ford finally argues that Attorney Culbert provided him with ineffective assistance of counsel when Attorney Culbert (1) failed to "ask any questions of the victim regarding her prior inconsistent statements" as to the cause of her injuries and (2) failed to "ask any impeaching or probing questions of the victim at all." The law in Ohio is clear, however, that "cross-examination falls within the ambit of trial strategy and does not establish ineffective assistance of counsel." *State v. Baughn*, 12th Dist. Clermont No.

CA2020-04-020, 2020-Ohio-5566, ¶ 37.  That is to say, "trial counsel's decision to engage, or not engage, in a particular line of questioning is presumed to be the product of sound trial strategy."  *State v. Sheldon*, 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 43, citing *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25.  This court "is not permitted to use the benefit of hindsight to second-guess the strategies of trial counsel."  *State v. Walker*, 12th Dist. Fayette No. CA2009-02-002, 2010-Ohio-329, ¶ 23. "[T]he fact that the trial strategy was ultimately unsuccessful or that there was another possible and better strategy available does not amount to ineffective assistance of counsel." *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 43.

{¶ 18} That said, even if Attorney Culbert's questioning of the victim on cross-examination did not fall within the ambit of trial strategy, the record is nevertheless clear that Attorney Culbert asked the victim, H.S., a number of questions regarding the cause of her injuries, her prior inconsistent statements as to the cause of her injuries, as well as several other questions challenging the victim's credibility in general.  These questions included, but were not limited to, questions regarding the victim's diagnosed epilepsy, whether she had suffered from epileptic seizures, and whether she had ever fallen down and injured herself during one of those epileptic seizures.

{¶ 19}  Attorney Culbert also asked the victim to read a portion of her medical records into the record.  These records showed that the victim had told the medical professionals who treated her for her injuries that she had tripped "over a cord to her vacuum cleaner" and fell "backwards striking her right posterior aspect of her head against the top of the chair."  These questions are directly related to the victim's prior inconsistent statements as to the cause of her injuries and the victim's overall credibility.  Therefore, Ford's claim that he was provided with ineffective assistance when Attorney Culbert (1) failed to "ask any questions of the victim regarding her prior inconsistent statements" as to the cause of her

injuries and (2) failed to "ask any impeaching or probing questions of the victim at all," lacks merit.  Accordingly, finding no merit to any of the arguments advanced herein, Ford's single assignment of error lacks merit and is overruled.

{¶ 20}  Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.