[Cite as *State v. Barbarawi*, 2024-Ohio-2665.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2023-07-077 |
| | | CA2023-07-078 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 7/15/2024 |
| BRYAN T. BARBARAWI aka | : | |
| MOHAMMED AL BARBARAWI, | | |
| | : | |
| Appellant. | | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case Nos. CR2022-08-1013; CR22-06-0877

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellee.

**M. POWELL, J.**

{¶ 1}  Appellant, Bryan T. Barbarawi aka Mohammed Al Barbarawi, appeals his conviction in the Butler County Court of Common Pleas for breaking and entering.

{¶ 2}  On June 10, 2022, appellant rented storage units 826 and 827 at Compass Self Storage in West Chester, Ohio, using the name Bryan Carbucks.  On June 23, 2022,

appellant, once again using the name Bryan Carbucks, rented storage unit 825 at Compass. The units were located at the end of a building in numerical order. Appellant's girlfriend was the secondary contact on each of the rentals. All three storage rental units were subject to identical rental contracts.

{¶ 3} Each rental contract provided that rent was due on the same numerical day of each succeeding month as the numerical day a unit was originally rented. Thus, appellant's rent on units 826 and 827 was due on the 10th day of each month and the rent on unit 825 was due on the 23rd day of each month. Pursuant to the contract, a renter had a five-day grace period after the rent was due to make the rental payment. If rent was not paid by the expiration of the grace period, the renter was locked out of the unit: a manager's lock was placed on the unit, preventing the renter from accessing the unit, and the renter's gate access code was no longer valid. The contract further provided that if rent was not paid within 31 days of its due date, the contents of the unit would be removed and auctioned off by Compass. Finally, the contract provided that living in a unit was prohibited and grounds for immediate termination of the rental agreement.

{¶ 4} Appellant failed to pay the rent for units 826 and 827 by the expiration of the July 15, 2022 grace period. As a result, manager's locks were placed on those units and appellant's access codes for the two units were suspended. However, as of July 27, 2022, appellant still had access to the premises because the grace period for unit 825 would not expire until July 28, 2022.

{¶ 5} On the morning of July 27, 2022, the manager of the storage facility noticed an SUV parked by units 825, 826, and 827. The manager drove around the premises and observed appellant's girlfriend loading items into the back of the SUV. Standing next to the open trunk of the SUV were various storage containers. The manager noticed that

the doors to units 825, 826, and 827 were all closed and locked. The manager did not see appellant near the units. Believing appellant was inside one of the units, the manager called the police. A West Chester Township police officer responded to the scene.

{¶ 6} The officer observed that the doors to units 825, 826, and 827 were closed and that at least two of the units had manager's locks on them. During his investigation, the officer discovered that the metal back wall of unit 826 had been modified to permit ingress and egress. After a second police officer pulled open the back wall, appellant was found inside the unit surrounded by a variety of items. According to the manager, no one is permitted inside a unit with a manager's lock on it, no one has permission to store items in a unit with a manager's lock on it, and no one has permission to pry open the back wall of a unit. After the police left, the manager noticed that someone had accessed an electrical box at the end of the building where unit 825 or 827 was located and had run electrical cords into appellant's three units to power lights and box fans. The manager observed that the units had been set up as though someone was living in them.

{¶ 7} Appellant was indicted in August 2022 for breaking and entering. The matter proceeded to a jury trial. The storage facility manager and the West Chester Township police officer testified on behalf of the state. Appellant did not testify or present witnesses on his behalf. On May 15, 2023, the jury found appellant guilty as charged. He was sentenced accordingly.

{¶ 8} Appellant appeals his conviction, raising one assignment of error:

{¶ 9} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR BREAKING AND ENTERING AND THE JUDGMENT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Appellant argues that his conviction for breaking and entering is not

supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove appellant was in the storage unit with purpose to commit a theft offense.

{¶ 11} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Hibbard*, 2023-Ohio-983, ¶ 9 (12th Dist.). The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Hibbard* at ¶ 10. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* "[A] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Davis*, 2011-Ohio-2207, ¶ 40 (12th Dist.). Circumstantial and direct evidence have the same probative value. *Hibbard* at ¶ 20.

{¶ 13} Appellant was convicted of breaking and entering, in violation of R.C. 2911.13(A), which provides, "No person by force, stealth, or deception, shall trespass in

an unoccupied structure, with purpose to commit therein any theft offense, as defined in [R.C.] 2913.01, or any felony." R.C. 2911.13 does not require an actual theft as an element of the offense; it requires only that the person trespass in an unoccupied structure with purpose to commit any theft offense. *State v. Braden*, 2014-Ohio-3385, ¶ 15 (12th Dist.).

**{¶ 14}** Upon thoroughly reviewing the record, we find that appellant's conviction for breaking and entering is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented ample circumstantial evidence that appellant was in unit 826 with purpose to commit a theft offense.

**{¶ 15}** The record shows that appellant failed to pay the rent for unit 826 by the expiration of the July 15, 2022 grace period. As a result, a manager's lock was placed on that unit. Pursuant to the rental contract and the manager's testimony, no one is permitted inside a unit with a manager's lock on it, no one has permission to store items in a unit with a manager's lock on it, and no one has permission to pry open the back wall of a unit. On July 27, 2022, appellant's girlfriend was seen loading items into an SUV parked next to unit 826. There is no evidence she was renting a storing unit at Compass at the time. Appellant was subsequently found inside unit 826 after a police officer pulled back open the back wall of the unit. The record shows that the metal back wall of unit 826 had been modified to permit ingress and egress. The record further shows that unit 826 had several items, including storage containers and bins. While appellant claims the state failed to provide any evidence regarding his intent to commit a theft offense inside the unit, "there is a reasonable inference that one who forcibly enters a dwelling does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference." *Braden*, 2014-Ohio-3385 at ¶ 15. The evidence establishes that

- 5 -

appellant continued to use and occupy unit 826 when he was no longer authorized to do so, including using the storage facility's electricity and using the units as residence. The foregoing satisfies the trespass with purpose to commit a theft offense element of breaking and entering.

{¶ 16} It is well established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Martino*, 2018-Ohio-2882, ¶ 13 (12th Dist.). It is equally well established that a conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses. *Id.* The jury is free to believe or disbelieve the testimony of any witness at trial. *State v. Keller*, 2019-Ohio-1397, ¶ 15 (12th Dist.).

{¶ 17} In light of the foregoing, we find that the evidence presented at trial does not weigh heavily in favor of acquittal and that the jury did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty of breaking and entering. Appellant's conviction for breaking and entering is therefore supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶ 18} Appellant's assignment of error is overruled.

{¶ 19} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.